UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM CAMSELL WELLS,

        Movant,

v.

UNITED STATES OF AMERICA,

        Respondent.
_____/

Criminal Case No. 11-20017-3
Civil Case No. 14-14072

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**ORDER DENYING MOVANT'S MOTION FOR DISCOVERY AND FOR EXTENSION OF TIME TO FILE MOTION TO VACATE [196]; DENYING MOVANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE [212]; AND DENYING MOVANT A CERTIFICATE OF APPEALABILITY**

On March 20, 2012, Movant pleaded guilty to two counts of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371. On November 20, 2012, the Honorable Julian A. Cook sentenced Movant to 102 months (eight years and six months) of imprisonment. Judge Cook also ordered Movant to pay $57,118,581 in restitution. Movant did not appeal his conviction or sentence; he had waived his right to do so in his Plea Agreement [Dkt. #76].

On November 8, 2013, Movant filed a Motion for Discovery and for Extension of Time to File a Motion to Vacate Sentence [196]. In a text-only order, Judge Cook ordered the government to respond to the motion by November 18,

1

2013. The government filed a Response [199] on November 18, 2013. Movant filed a Reply [200] on December 2, 2013.

On October 22, 2014, Movant filed a Motion to Vacate, Set Aside, or Correct Sentence [212]. Movant's case was reassigned from Judge Cook to this Court on December 5, 2014. The government, on order of the Court, filed a Response [222] on May 6, 2015. Movant filed a Reply [228] on May 22, 2015.

For the reasons stated below, Movant's Motion for Discovery and for Extension of Time to File a Motion to Vacate Sentence [196] is **DENIED**. Movant's Motion to Vacate, Set Aside, or Correct Sentence [212] is also **DENIED**. Finally, Movant is **DENIED** a certificate of appealability.

## FACTUAL BACKGROUND

In his Plea Agreement [76], Movant conceded the following factual basis for his guilty pleas:

> From approximately the fall of 2003 to July 2007, in the Eastern District of Michigan, Southern Division, defendant Wells conspired with several others to defraud mortgage lenders out of many million dollars.
> Count One: "Real" Loans. It was a part of the scheme that mortgage loans would be obtained to purchase residential properties from legitimate sellers. These mortgage loans were referred to as "real" loans. A "real" loan would typically be closed at the offices of a legitimate title company, but was fraudulent in that the buyer was a straw borrower who did not provide the down payment funds himself or intend to live in the house purchased. In most instances, the straw

borrower's income was artificially inflated on the loan application materials to qualify for the loan.

Count Two: "Ghost" Loans.  It was also a part of the scheme that a second category of mortgage loans would be obtained, which were referred to as "ghost" loans.

At all relevant times, Wells knew:

- that the straw borrower was not the true borrower but merely someone with an acceptable credit history who was recruited to assume the role of the borrower and who was paid a substantial amount of money to play that role,
- that the 20% down payment to the seller, which the loan application stated would be paid from the straw borrower's own funds, would, in the case of a "real" loan, be paid instead from another source (Count One) or, in the case of a "ghost" loan, not be paid at all (Count Two),
- that the straw borrower had no intention of finding a reliable tenant for or moving into the subject property, or using his or her own funds to make the monthly loan payments, pay the real estate taxes, and secure adequate insurance for the property,
- that the lease agreement between the straw borrower and a third party tenant, if one was submitted, which purported to show that the straw borrower would receive a stream of rental income in the future, was fabricated and bogus,
- that the verification of deposit (VOD), if one was submitted, which purported to support the representation in the loan application that the nominal borrower had a bank account with a large balance, was fraudulent because the account balance had been inflated by a temporary transfer of funds into the account that did not belong to the nominal borrower,
- that the same residential property would, in the usual situation, be used simultaneously as the collateral for one "real" loan and the ostensible collateral for two or more "ghost" loans, with each loan being funded by a different lender, and

- in the case of a "ghost" loan (Count Two), that the entire transaction was a sham, that there was no actual transfer of funds from the straw borrower to the seller or transfer of legal title from the seller to the straw borrower, that no legitimate title company was involved in the transaction, that the warranty deed and mortgage document submitted to the mortgage lender were never recorded in the county register of deeds, and that the loan proceeds would be used by the participants in the scheme to continue the scheme and enrich themselves.

Wells' main role in the conspiracy was to operate and oversee "Lawyers Escrow," a business used in the scheme to act as a fictitious closing company set up to receive wire transfers of funds for ghost loans. Wells also recruited straw buyers and located homes for use in the scheme. Under Wells' direction, co-conspirator Wilinevah Richardson processed fraudulent loan applications for straw borrowers, fabricated title insurance documents and closing protection letters, prepared and notarized false settlement statements and facilitated the monthly payments to mortgage lenders (preventing the scheme from being exposed) by obtaining and distributing cashier's checks purchased with funds provided from the leader of the scheme, Ronnie Duke, and from Wells. . . .

In addition, Wells opened several bank accounts in the name of "Lawyers Escrow." These accounts were used in the scheme by Wells and his coconspirators to accept interstate wire transfers of funds disbursed from mortgage lenders to close hundreds of "ghost" loans—in other words, loans that were sham transactions because the title documents were counterfeit and the warranty deeds and mortgages were never recorded, leaving the lenders completely unsecured. When Wells received these interstate wire transfers from mortgage lenders in the Lawyers Escrow accounts, he did not disburse the funds as indicated on the HUD-1 settlement statements. Instead, the funds were used to continue the scheme. Wells also diverted scheme funds into his business Hardcore Motorsports.

When the mortgage lenders approved the loan applications submitted at Wells' direction, they wired the loan proceeds to bank accounts located in metropolitan Detroit in the names of title companies controlled by other participants in the scheme. These wire

transfers originated from bank accounts located outside of the State of Michigan.

Movant does not claim that he stipulated to these facts in error.

## ANALYSIS

### I. Motion for Discovery and for Extension [196]

Movant has submitted the first page of a proffer agreement dated August 22, 2007, indicating that the parties were to meet to discuss Movant's proffer "in connection with the investigation leading to the search of Hardcore Motorsports on July 13, 2007." To assist him in preparing a § 2255 motion to vacate his sentence, Movant asks the Court to compel the government to produce a full copy of the proffer agreement, along with all notes and other recordings created by government representatives during the proffer meeting. Movant further asks the Court to permit him to file a § 2255 motion within 90 days after the government's delivery of the requested information or his receipt of the Court's order, whichever is later.

Under Rule 6 of the Rules Governing Section 2255 Proceedings, a judge may authorize a movant to conduct discovery "for good cause." *Franco v. United States*, 187 F.3d 635 (Table), 1999 WL 623354, at *2 (6th Cir. 1999). The good cause requirement bars "fishing expeditions based on a petitioner's conclusory allegations." *Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009) (quoting

5

*Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004)). The movant must "present[] specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate." *Id.* (quoting *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001)).

Movant has not shown good cause for the discovery he requests. He does not explain, even in general terms, how the contents of the proffer agreement and/or the government's recordings from the proffer meeting could support an argument for relief under § 2255. His request appears to be a "fishing expedition" based on a conclusory allegation that the requested information would be helpful. Because Movant is not entitled to the requested discovery, his request for an extension to accommodate that discovery is moot. Accordingly, Movant's Motion for Discovery and for Extension [196] is **DENIED**.

## II. Motion to Vacate, Set Aside, or Correct Sentence [212]

To succeed on a motion to vacate, set aside, or correct sentence, a movant must allege "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). Movant alleges a violation of his constitutional right to the effective

6

assistance of counsel, an "error of constitutional magnitude." *See id.* As explained below, the Court rejects Movant's ineffective assistance of counsel claim on its merits. The Court therefore need not address the government's argument that Movant's motion is time-barred.

To establish ineffective assistance of counsel, Movant must show that his counsel rendered deficient performance and thereby prejudiced Movant's defense so as to render the outcome of the proceedings unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Movant identifies several alleged deficiencies in his counsel's performance. None, however, meet the *Strickland* standard.

### A. Failure to ensure that loss was offset by all funds paid to victims

Movant claims that certain funds, possibly totaling $10 million, were paid to the lenders victimized by Movant's scheme. He faults his counsel for failing to ensure that these offsetting funds were subtracted from the loss alleged by the government. He attaches a copy of a chart prepared by the government to identify the loss on each loan, which he has annotated with some handwritten notes. Though Movant's handwriting is difficult to read, he appears to be alleging that he and his co-conspirators made payments on some of the loans and that these payments were erroneously omitted when calculating the lenders' loss.

In the Presentence Report, the Probation Department wrote the following concerning the loss calculation:

> According to the FBI and the Government, Wells was involved in obtaining fraudulent mortgage loans totaling $66,306,601.00 based on lists of mortgages. Many of these properties of the instant offense have gone into foreclosure and were sold. The loss amount resulting from the sale of these properties has been offset by the proceeds from the sale. The Government believes that the total loss amount attributable to Wells is $57,118,581.00. The probation department has no information to the contrary. It should be noted, the defendant believes he should be held responsible for less than $50,000,000.00, but has not supplied any supporting documentation. For guideline calculation purposes, William Wells shall be held accountable for a total loss of $57,118,581.00.

This excerpt shows that the government did attempt to offset the loss by certain funds paid to the victims. It also shows that Defendant, presumably with the assistance of counsel, challenged the loss amount but failed to provide documents to support the challenge. Movant does not now identify any documents that might substantiate his challenge to the loss amount, or explain why his counsel was deficient for failing to locate and use those documents. His vague allegations of overlooked payments are insufficient to seriously question the effectiveness of his counsel.

### B. Failure to challenge criminal history category

Movant faults his counsel for failing to challenge his criminal history category of II. The Probation Department concluded that this was the applicable

8

criminal history category because Movant's criminal history score was three. The Department assigned Movant one point, pursuant to Guidelines § 4A1.1(c), for his sentence on a conviction for driving while impaired. The Department assigned an additional two points, pursuant to Guidelines § 4A1.1(d), because Movant committed the instant conspiracy offense during his term of probation on the driving conviction. Movant does not address any specific provision of the Guidelines, but asserts that the Department erred in assigning points to "a traffic offense of operating a motor vehicle while impaired, for which [Movant] received only a fine and six months unsupervised probation."

Movant may intend to challenge the Department's calculation on the basis of Guidelines § 4A1.2(c). That section provides that sentences for "careless or reckless driving" and similar offenses are not counted when calculating criminal history unless one of two conditions is met: (1) the sentence was for at least thirty days of imprisonment or *more than one year* of probation, or (2) the prior offense was similar to one of the federal offenses for which the defendant is being sentenced. However, the Guidelines application notes clarify that the provision is inapplicable to "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known)." Indeed, such offenses "are always counted, without regard to how the offense is classified." Since

9

Movant's prior conviction for driving while impaired is similar to a conviction for driving while intoxicated or under the influence, there was no error in counting it for the purposes of calculating his criminal history category. *See United States v. Gregory*, 124 F.3d 200 (Table), 1997 WL 561422, at *10 (6th Cir. 1997).

Because Movant has failed to identify any viable challenge to his criminal history category, he has not shown that his counsel's failure to raise such a challenge rendered his performance deficient.

### C. Failure to raise mental health and substance abuse as mitigating factors at sentencing

Movant faults his counsel for failing to raise, at sentencing, Movant's alcohol addiction and mental health problems, including diagnoses of borderline personality disorder and PTSD. Movant argues that if his counsel had raised these mitigating factors, he likely would have received a lower sentence.

That likelihood is undermined by the Presentence Report, which indicated that Movant reported no serious mental health or alcohol abuse problems. It is true that the Probation Department reported that Movant was subject to traumatic abuse from his stepfather in his youth, leading to a suicide attempt at age thirteen. However, it further reported that over the preceding five years, Movant had been making progress in overcoming anger and shame stemming from the abuse. According to the Probation Department, Movant reported that he was "coming to

10

terms with" his mental health and that his emotional health was "really good." Further, when asked if he could benefit from mental health counseling, he stated he was not interested. Movant also declined substance abuse treatment. Indeed, with respect to alcohol, Movant reported that for the preceding four or five years he had been drinking only one mixed drink every couple of months.

Movant has not alleged that he informed his counsel that his mental health and alcohol addiction problems were any greater than reported by the Probation Department. Even if he had, and if counsel had relayed Movant's allegations of greater problems to the Court, it is uncertain that the Court would have resolved the inconsistency in Movant's favor. Finally, any potential reduction in sentence would remain in the Court's discretion. It is uncertain that the Court, in its discretion, would find Movant's mental health problems and alcohol addition to justify a lower sentence for years of participation in financial fraud. Accordingly, Movant has not shown that he was prejudiced by his counsel's failure to raise Movant's mental health and alcohol addiction as mitigating factors.

### D. Failure to obtain a second substantial assistance departure

The government moved for a departure in light of Movant's substantial assistance in the investigation and prosecution of co-defendant Brierly. However, the government did not file a comparable motion to reflect Movant's provision of

information concerning Dresdner Financial. Movant argues that his counsel was ineffective for failing to convince the government to do so.

The government asserts that the information provided by Movant concerning Dresdner Financial was redundant in light of information already known by the government, and that it did not lead to criminal charges. In other words, the government concluded that Movant's information did not constitute substantial assistance. Movant does not identify any argument his counsel could have raised to challenge that conclusion. Nor does he identify any constraint on the government's discretion to determine if a substantial assistance motion was warranted. Accordingly, Movant has not shown that the absence of such a motion resulted from the ineffective assistance of counsel.

### E. Failure to ensure application of Sentencing Guidelines § 2B1.1 application note 3(E)(iii)

Movant faults his counsel for failing to ensure that the amount of restitution was calculated pursuant to application note 3(E)(iii) to Sentencing Guidelines § 2B1.1. That note provides that "in the case of a fraud involving a mortgage loan, if the collateral has not been disposed of by the time of sentencing, … the fair market value of the collateral [should be determined] as of the date on which the guilt of the defendant has been established." However, Movant does not explain how his counsel's failure to establish this note's applicability rendered his performance

deficient. It is unclear how counsel could have identified any loans with collateral not "disposed of" at the time of Movant's sentencing: the majority of the loans were "ghost" loans that never had collateral to begin with, and the collateral on the remaining loans was likely disposed of in the five-and-a-half years between the end of the scheme and Movant's sentencing. Thus, Movant has not raised a credible challenge to his counsel's performance.

### F. Failure to inform Movant of his sentencing exposure

Movant claims that his first attorney, Hayes, led him to believe he was facing a maximum sentence of three years of imprisonment, and that his second attorney, Ginsberg, led him to believe his sentence would not exceed five years of imprisonment. However, Movant signed an Acknowledgment of Information [74] indicating that he understood that *each* count included a maximum penalty of five years. He also signed a Plea Agreement [76] acknowledging a maximum sentence of ten years—even in the agreement's caption. Further, his Guilty Plea Questionnaire [75] includes Movant's handwritten acknowledgment that he faced a maximum prison term of ten years. Because the record reflects that Movant understood his sentencing exposure, he cannot show that his counsel caused him to misunderstand it.

## CONCLUSION

Movant has failed to show a violation of his constitutional right to the effective assistance of counsel. Accordingly, Movant's Motion to Vacate, Set Aside, or Correct Sentence [212] is **DENIED**. Movant has also failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will **DENY** Movant a certificate of appealability. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly, for the reasons stated above,

**IT IS ORDERED** that Movant's Motion for Discovery and for Extension [196] is **DENIED**.

**IT IS FURTHER ORDERED** that Movant's Motion to Vacate, Set Aside, or Correct Sentence [212] is **DENIED**.

**IT IS FURTHER ORDERED** that Movant is **DENIED** a certificate of appealability.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: October 27, 2015　　　Senior United States District Judge